Good morning, Your Honors. May it please the Court? I'm Marilee Marshall, and I represent Mr. Martinez. And unless the Court has something else that they'd like me to address, I would just make a few remarks about the Apprendi issue. Go right ahead. This case was pending before the California Supreme Court on its petition for review at the time that Apprendi was decided. It had been raised as a Sterone issue. I feel that Apprendi and this Court's subsequent interpretation of Apprendi in Jones v. Smith compels reversal in this case of the premeditated element, insofar as it could be separated out, of the attempt murders. Both murders?  Both attempt murders? Yes. They were both premeditated. Well, they were attempted murders. They were two premeditated attempt murders. And as the Court, I'm sure, is aware, what happened was after the close of evidence, the prosecution was allowed to amend the information to allege the premeditation charge separately. But isn't your argument, to follow up on Judge Rawlinson's question, much stronger with regard to the second victim, Robert Jimenez, than it is with regard to the first? Because clearly the preliminary hearing testimony, I assume, would have focused on the assault on the first victim. Oh. And so it would be harder to argue that you didn't have notice on that one. And we've got, what, consecutive sentences here, so it would make a difference if we granted the writ as to one but not the other. Indubitably, I feel it's a strong argument, and it also ties in with the transferred intent argument that I also made, because with respect to the second victim, there was very little evidence that he even saw the person there, or knew there was the other person in the room. But I still feel that there's an argument, a strong argument, for a reversal on both of them because of the fact that As I understood the record, the first victim was shot through the screen door, and the two were relatively close, the assailant and the victim were close, but the first victim, I guess, staggered back and then was headed for another room or to get the phone or something and was shot again? Is that what happened? What happened? Well, it was disputed, not disputed, because the client's testimony was that he was not there. I understand the outline. But the prosecution's evidence was somewhat contradictory. I think that the victim, the first Peter, Peter Jimenez, first said he was lying on the couch, and then he said later he got up to answer the door. So either he was on the couch and the shooter was at the door or else he got up to answer the door. But he'd already been shot when somebody else came out. Okay. Then the second victim comes in response to hearing the shots, and he gets hit. Exactly. Although he can't see his assailant. Exactly. And then is there another round of shots that are just sort of fired into the house after that? That was what was confusing. No, I think it was there were shots, there were shots, and then there were shots. So two series of shots. Two series of shots. But it's unclear really given that there was very little testimony actually about the lighting conditions. Actually, the victim said it was light, then the police officers that came out said there were no motion lights or anything like that. So we don't really know whether the person who was doing the shooting could see the second person there. I thought there was, during one of the testimony of one of the women in the house, that they turned the lights down in the courtroom to try and simulate the lighting conditions. There was something like that, but it was. There was testimony. There was some testimony about it, but it was all impeached and contradicted actually by the police officers that came out. They said there were no motion lights. There was nothing like that. On this review, don't we have to view those facts in the light most favorable to the state? We don't sit on habeas in reconsideration of factual issues, do we? No, but I don't think that those issues were ever really decided adversely. Given the instructions that were given. They were decided adversely with regard to the ability of the witness to perceive the identity of the assailant. The first assailant, of course, but the second assailant, no. Tell me about that. You said that before. Here he shoots. He's on the basis, assuming that the jury found in favor of the government. So he shoots one brother. Then another brother appears on the scene, and he is shot. Okay? Now, where does Apprendi fit into this? It's the question of whether or not it was premeditated attempted murder or just attempted murder. Actually, in California. Now, on that, do we not go back in time to his first appearance at the residence saying, I'm hearing that you people want to do something. What was the exact language he said? You're going to kill me? That was in the afternoon. Supposedly there was a discussion in the afternoon about somebody trying to kill me. Or the evening shooting. Yes. Somebody trying to kill me. So do you not feel that that is relevant at all on the question of premeditation? Perhaps with respect to the first brother that was shot. Here's a man who comes in and says, I understand that you people want to kill me. What are you talking about? We're friends. Later on, he comes back in the evening and shoots two brothers. Is there sufficient evidence of premeditation? I think there might be sufficient evidence. We didn't raise sufficiency of the evidence with respect to the first brother at all. I'm sorry. I'm much older than my colleagues, so you have to speak up a little bit. We didn't raise sufficiency of the evidence as an issue. The question is whether or not. You are raising Apprendi. I'm raising Apprendi. The prosecution never even argued that there was sufficient evidence that he attempted to, that he tried to kill the second brother. It was a transferred intent prosecution. They said, well, you know, that was the only theory that was ever presented was that he tried to kill one brother, and so that intent transferred to the other, which is another argument that we made. The question is whether or not he had. How do we know that he only intended to kill one brother? Well, we don't. But the jury was never given an opportunity to decide that based upon determining the men's array with respect to the second brother. It could have been an accident. You might not have seen him. Or it could have been an assault with a deadly weapon. Because since they weren't killed, I mean, if the people were dead, we would probably have a second-degree murder at best. I mean, because but no specific intent to kill. Given this under California law, you may not use transferred intent in an attempt attempted murder prosecution. OK. Yes. Now, isn't if it was improper. Let us assume that it was improper. Doesn't didn't the fact that he charged on transferred attempt help the defendants? No, because. Because the jury had to find whether the intent was transferred. No, Your Honor, because the jury, once they found that he intended to kill one brother, not even talking about the premeditation aspect, but once he intended to kill one, they automatically found the next. And that's that's why they shouldn't have been given that instruction. Had I been the prosecutor, the easiest thing was forget about transferred intent. The fact that he came in and shot away at two brothers, that he intended to kill both of them. The jury never had a right, never got to determine the men's array. So the defendant was entitled to have the jury determine that. But the Apprendi issue, it ties in with that, but it really goes to the question whether he had noticed that they were going to charge it as premeditated. There's a big difference in California. Premeditated gets you a life sentence, whereas unpremeditated is a high term of nine years. I'd like to release. Mr. Robinson. Good morning. May it please the Court. Warren Robinson, Deputy Attorney General, appearing for Respondent. I think it's important that we have the facts of the shooting well in mind. Late at night, petitioner appears at the Menace residence. Peter goes to the door and then Peter is shot through the screen door. Peter then runs. More shots are fired and Peter is shot in the back and the arm. Peter then goes down to the floor in the kitchen. The second victim, his brother Robert, hearing the sounds of the shots, goes into the kitchen. He sees Peter on the floor. While Robert is standing, additional shots, plural, are fired and Robert is hit in the chest. Now, given those facts, it was clear that petitioner attempted to kill both brothers. He basically had the same motivation. Motive in this case was always problematical because petitioner was a very close friend of both brothers. But apparently there was some type of dispute that arose. Petitioner expressed anger at both brothers. And the motivation as to Robert appears to be as strong as the motive with regards to the first victim, Peter. What counsel then did you use to transfer intent theory if you had the evidence that the motive was the same as to both brothers? Well, the prosecutor made a decision to ask for instructions on that theory. He did at one point argue to the jury that if you find the shooting of Robert was accidental, then you can rely on transferred intent. The prosecutor was just trying to cover all his bases. If you look at his argument, he never adopted transfer intent as the sole theory. As to the second brother? As to the second brother. He did say if you find that the shooting of Robert was accidental, then you rely on transferred intent. But he did not embrace that as his sole theory. Counsel, what evidence was there in the record regarding whether or not the shooter saw the second brother and vice versa? Was there any evidence in the record as to whether or not the shooter saw the second brother or the second brother saw the shooter? Was there any evidence regarding that? Well, we know the second brother didn't see the shooter because he testified he couldn't identify the shooter. But there is strong circumstantial evidence that petitioner saw Robert. And that evidence consists of the fact that Peter is already on the floor, already shot. Robert is in a standing position and yet is hit more than once in the chest. And to me, that constitutes very strong circumstantial evidence of an attempt to kill Robert. What, on a theory that even if he didn't know it was a different victim, that he was still trying to kill the first person he was shooting at? No, that he would have he would have known that he shot Peter. He would have seen Peter go down. He would have seen Robert in the kitchen standing. And then he fired at Robert's chest. What was the testimony that there were lights on in the house at the time of the shooting? I can't answer that question as to as to the lighting. Where is the evidence in the record that he saw Peter go down? Well, the evidence is that that Peter was on the kitchen floor. If Robert could see his brother on the kitchen floor floor, presumably petitioner stationed at the door also saw that. That's a stretch. That's more than circumstantial, it seems to me. I mean, was there a diagram or pictures of the house so that you could standing at the porch door see into the kitchen floor? I think there was no. No, we can't read into petitioners mind. And no, I understand that it would have to come to the testimony of either people who lived in the house and investigating detective who sketched a crime scene diagram. But is there any evidence in the record at all as to whether you could even see the floor of the kitchen from the front porch? Well, I would submit the fact that. The brother was Peter was down on the floor and another person standing up a shot in the chest constitutes such circumstantial evidence. Help me out. Are you telling the court because I apparently missed this in reading it, that the trial judge charged both on specific intent to to to murder both brothers? And then then the chastity intent came in as an alternate theory. Well, in the information, appellant was a petitioner was simply charged with attempted murder, which under California law requires a specific intent to kill. At the close of the evidence, an allegation was added as to both counts that the attempted murders were committed with deliberation premeditation. But I'm inquiring as to the instruction to the jury by the judge. Well, all the instructions came at the same time, I believe, in response to Judge Rollins. And you said that this was an alternative theory that the that the government argued. The question that I'm asking is not what the government argued as to what the court charged. As to both brothers, the court, the court charged attempted murder based on a specific intent to kill. Okay. All right. And that the transferred intent came in under an alternative theory. Yes. Saying that if you find that Robert was shot by accident, then you are permitted to apply what we call the transferred intent theory. That is correct. And it's our position that although the that instruction should not have been given, that error was harmless as the court of appeal found and the district court found. I would say that Apprendi simply isn't an issue in this case because the information, of course, was amended to allege deliberation and premeditation as to both counts, and the jury made findings as to both counts. So Apprendi, in my view, is not an issue whatsoever. Counsel, let me take you back to your response that any error in giving the transferred intent instruction was harmless. What's the basis for your argument that that instruction was harmless in light of the facts in this case? Again, it's based on, one, the fact that when Robert was shot at the chest level, his brother Peter was lying down on the kitchen floor, and the fact that the motivation Petitioner had to kill the brothers appeared to be the same. So it would be those two factors. Okay. I'm prepared to submit the matter if the Court has no further questions. I don't think we have any further questions. Ms. Marshall, you have about a minute. A minute? I think Apprendi is clearly applicable. Can you explicate on that? A minute? Yeah. Well, I mean, it just seems to me that if the jury made the determination after the judge granted the amendment, then you've got a jury determination. Well. So how is Apprendi violated? Although, I mean, quoting out of this Court's opinion in Jones v. Smith, which was also my case, you said, this Court said that even though Apprendi involved a failure to submit a factual determination to a jury for proof beyond a reasonable doubt, as opposed to a discrepancy between an indictment and a conviction, that the Apprendi decision, the implications of Apprendi for the line of cases involving discrepancies, amendments. This is not a variance. It's an amendment that changes the homens rea, which is clearly an element of the crime. And in Jones v. Smith, the Court didn't apply the Apprendi law, the Apprendi analysis, because of the fact that it was good to have it be retroactive. But in this case, it's not retroactive. And I think that this Court in Jones made clear that Apprendi requires that there not be a substantial variance between the charging document and what is submitted to the jury. Counsel, in Jones, wasn't it true that the indictment was never amended? That's true. And so we have a different situation here where the indictment was, in fact, amended. That's true. But it was amended very late. But in Jones, it does not dictate the result on Apprendi that you are seeking. Well, in Jones, well, Sterone does. And so far as Apprendi is just clarifying in a lot of ways what was always the law in the United States, that you have to charge people by way of indictment or information with certain specific crimes. And you can't, after the game is over, change that, the mens rea of the crime. But doesn't the case law also say that you can look to documents other than the face of the indictment? You can look at other proceedings prior to the jury determination to see whether or not there was notice to the defendant of the charges that he was facing. If it's a question of actual notice, I think that that's a different question. That's what the court was facing in Jones because Apprendi was not yet applicable. Why didn't you have that notice from the preliminary hearing? I mean, you knew you were defending against a case involving an attempted murder. For whatever reason, the prosecution, like, you know, like counsel admitted, the motivation in this case was very, very strange. I mean, there was really no motive at all. I mean, it was some squabble over a football game. These people loved each other. They've known each other for years. So, yeah, well, if my client did it, which he always maintains he didn't, we still don't know why. So I don't really think that it would be beyond belief that the prosecution might have decided not to charge it that way. I mean, they may be charged whatever they thought they could get. And obviously, as the second brother, they didn't think they could get it or they wouldn't have relied on transferred intent. Thank you, counsel. The case just argued is submitted. And we will hear argument in the next case, which is Trochan versus Terhune. May it please the Court. My name is Victoria Stafford. I represent Appellant Miguel Troches in this case. Your Honors, Mr. Troches stands convicted of a crime he never had the opportunity to defend again. He was charged with the crime after he had already presented his defense. Mr. Troches was charged originally with theft and with assault. He got up on the stand in his defense and testified that he entered the store with the intent to steal something, but never actually stole anything. After his testimony, the prosecutor requested amendment of the information to add a burglary charge. Ultimately, he was the jury hung on theft and the assault charges and convicted him of the burglary. Mr. Troches is now serving a sentence of 25 to life for this offense. There is not a single case from any jurisdiction that permits amendment of the information at the conclusion of the trial to add a new offense that's not included in any of the charged offenses. But you've got a statute that purports to do that, don't you? Well, as this court stated in Gray v. Raines, the state is not free to set up a statutory scheme that overrides constitutional provisions. And in fact, the statute, Penal Code Section 109, says amendment of the information is permitted at any time unless the substantial rights of the defendant would be prejudiced thereby. Clearly, charging a defendant after he has presented his defense with a completely new offense prejudices his substantial rights. Is it per se prejudice or do we have to look at the actual facts? I'm hearing a per se argument. Per se. Per se. Per se. Every case. Why would that be in the light of the preliminary hearing testimony that essentially laid out all of the facts of his entry to the store, his taking of the code, his stabbing of the security guard? Why would he not have notice for due process analysis sufficient to overcome your constitutional objection? Again, this court points out that notice of conduct alone does not give notice of the charges. In other words, there are many things that could be charged based on the preliminary hearing testimony. He could have been charged with various things, but he was not charged with those crimes. Is your argument that it's unfair to convict my client because of the admissions that he made? Because as I understand the record, the prosecution could not charge a burglary under section 459 based on the state of the record at the time of the preliminary hearing because they didn't have an admission from your client that he entered with intent. So is that your argument that it's unfair to convict him based upon his own testimony at his trial? No, that's not the argument. The argument is that it's unfair to convict him of a crime he was not charged with. You can't hold a trial and then see which way the evidence went and then add new charges based on the evidence. The cases are clear that it does not matter why the prosecution is adding new charges at the end of the trial. They can't do it. It does not matter if it's based on the testimony given at trial. For example, in this Court's case, Gravy Reigns, it was the prosecution added a new charge at the conclusion of the trial based on the defendant's testimony. And the Court said it does not matter why the prosecution adds the charges. They simply cannot add the charges that late in the game unless it's a lesser included offense. And the reason is that under the Constitution, the defendant has the right to have an opportunity to prepare his defense. Well, how would his defense have been different if he had known that he was facing a burglary charge in addition to a theft and, what, assault with a deadly weapon? Well, he certainly wouldn't have gotten up on the stand and said, I intended to steal when I entered, but I didn't. He probably would have testified differently. I wouldn't have made the incriminating admission. Okay. And is that it, basically? That's it. That's what preparing one's defense is about. Just in Gravy Reigns, he was charged with forcible rape. He gets up on the stand and says, I didn't rape her forcibly. It was consensual sex. They turn around and charge him with statutory rape. He can't do that, according to this Court. The evidence at the preliminary hearing showed the victim's age. They could have charged him with statutory rape, but they didn't charge him with statutory rape. He got up on the stand. He incriminated himself. Basically, as this Court stated, a trap was set for him. They convicted him of a new crime based on his defense. That's what preparation of a defense is all about. So the defense in this case was to admit a burglary? That was the defense's theory? Right. Basically, his defense was, yeah, I went into the store with the intent of stealing something, but the security guard was on me, so I couldn't. I didn't steal anything. Was it that, or was it simply that the client was not well-prepared for his testimony and blurted out an admission that his lawyer would never have allowed him to make if he had been better prepared for his testimony? I don't know why it is, but ultimately, it doesn't matter, because every single authority on point says, regardless of the reason you're adding charges late in the game, you cannot do so unless it's a charge of a lesser-included offense. Even if the admission comes from his own mouth, the cases say regardless of the evidence presented at trial,  I just wanted to add that, once again, there's California, there are at least four California Supreme Court cases directly on point holding this. There's not a single case in any jurisdiction that says you can add non-included charges that late in the game. Okay. I think you're making an excellent argument on state law. Now we are in federal constitutional law, and the keystone of our inquiry was, under the circumstances, did the petitioner have notice that he would have been charged with burglary? And the answer is no. The answer is no. How can you say that? If he admitted, if he, let's see, he said, after he is apprehended, he is in the office, is that right? And then he threatened to kill anyone else who entered the office. Did he not? In fact, the jury hung on the assault charge. The jury did not find the security guard's testimony credible, so I really don't know if the jury accepted that fact. But at least you will concede that that was evidence before the jury. Correct. And he said, the testimony went, if anyone enters this office, I'm going to kill them. Correct. And concerned that the testimony, as I recall it, was concerned that the store manager might come into the office, Cruz permitted your client to leave. And as a process of leaving, he's running and runs into a rack of clothing, trips, and they grab him again. Correct. Now, under that, if you, let's be very specific. How do you define the crime of burglary? Well, burglary in California is entering a structure with the intent to commit a felony or a theft. And at the preliminary hearing, there were very few facts showing what his intent was when he entered the store. And ultimately, it doesn't matter, is my argument, what the preliminary hearing showed because he was not charged with burglary. If it showed a burglary, it does not really matter because he was not charged with a burglary. But even so, the facts at the preliminary hearing showed only that once he was in the store, he might have attempted to steal, but not that he entered the store with the intent to steal. You are saying that, okay, then I can come back. Where did he have notice? If he knew this information himself, did he not have notice? I don't think constitutionally adequate notice is provided whenever a defendant knows what actually happened during the offense. For example, the example you gave of him threatening to kill anyone who came in, he could have been charged with terrorist threats, but he wasn't. Therefore, the prosecution can't. I go back to your definition of burglary. Entering a common law breaking and entering at night with the intention of committing a felony. Now you can have a felony stealing some things or you can have a felony killing somebody. Right? Right. At least on that very narrow issue. And I'm not saying that. I'm just trying to parse your argument because I think it's a fascinating argument. You are saying that notwithstanding any testimony that appears at trial, under the amendment procedure in the state of California, you cannot base an amendment on testimony adduced at trial. That's not the point I'm making. That's not the point I'm making. You cannot base, you cannot add a charge after the defendant has presented his defense, regardless of the reason for doing so, whether he testified, whether the prosecutor simply forgot to add the charge at the beginning of the trial, whatever the reason, the case law says you can't do it. This Court's case law says it. Under state law, now we get back to constitutional law, what is the constitutional violation? That I did not have adequate notice of my own testimony? No. Adequate notice of what I was being charged with. And what Supreme Court case sets forth the clearly established law that you are relying upon? In Ray Oliver. Reasonable opportunity to prepare one's defense. In Ray Oliver is the Supreme Court case. Right. In Ray Oliver. Okay. I just wanted to make sure. All right. Okay. Thank you. Thank you. Good morning, Your Honors. Deputy Attorney General Tom Schiff for Respondent. I wonder if you'd respond to that argument, that basic argument that your friend is making right now. The proper standard here is that this, of course, this case is decided under the Anti-Terrorism and Effective Death Penalty Act. And the only relevant precedent we're looking at is the United States Supreme Court precedent. As I understand Counsel's argument, she's arguing that basically you can only be convicted of offenses actually charged in a charging document, or less included offenses of those charges included in a charging document. And that's, there is no Supreme Court, United States Supreme Court precedent holding that. She said in Ray Oliver. In Ray Oliver. That's why I asked the question, because I wanted to segregate what the case is that she's relying upon. So that's the case she has given us for the premise of notice. And so what's your response to that? In addition to Oliver, there's also Cole, which is cited in the briefs. And both of those cases basically provide that in order to, in order for a defendant to receive constitutionally adequate notice of the charges against them, that he have reasonable notice of the charges against him. And in this case, he did receive that reasonable notice through the preliminary hearing transcripts. Basically, through the preliminary hearing transcripts, he did have reasonable notice that he might be facing a possible burglary charge. But what evidence was adduced at the preliminary hearing to establish that he possessed the requisite intent under Section 459 at the time that he entered the store? There's several facts from the preliminary hearing. There's two that I want to focus on. First was his admission that he entered the store with no money to steal. I mean, with no money. And second was, based on the preliminary hearing, it showed that he entered the store with a knife. So those two events, entering the store without any money and with the knife before entry, and then combined with the circumstances which happened afterwards, that he used that knife to cut out a security tag out of a jacket, that he used that knife to stab a security guard, that he attempted to run, that he's wearing that jacket with the cutout security tag. I think all of those circumstances considered together show that at the time of the entry, that he wasn't intending just to browse. He wasn't intending to steal when he entered the store. Why wasn't burglary charged originally then, or amended before? Why wasn't the indictment amended before trial to insert a burglary charge? Why was the indictment amended before trial to insert a burglary charge?  Why was the indictment amended before trial to insert a burglary charge, then at the preliminary hearing, due sufficient evidence to support a burglary charge? It's not entirely clear from the record. The prosecutor does make a statement when he does request a burglary instruction that I couldn't have charged it earlier. And basically, I think there's a distinction between a prosecutor's charging duties and also whether there's sufficient evidence to support a burglary charge. I think there's two different inquiries, because a prosecutor, he also has an ethical obligation to only proceed on charges that he believes that he has enough admissible evidence to prove to a reasonable trier of fact beyond a reasonable doubt. And ultimately, aside from that point, the second point, too, is that the ultimate question here is, again, is whether under clearly established United States Supreme Court authority, whether he had reasonable notice. And we can disagree. Could you keep your voice up, counsel? Sorry, Your Honor. We can disagree about different – it appears that the magistrate judge believed that there wasn't sufficient evidence, but the court of appeal and also the district court believed that there was. And basically, the standard under the ADPA is not whether it's just erroneous or whether it's incorrect, but whether that – whether the California Court of Appeals ruling rejecting that due process notice claim was unreasonable. So it not only has to be erroneous, it has to also be unreasonable under the ADPA. So basically – in short, basically to summarize, there is no United States Supreme Court precedent holding that you can only be convicted of charge in a – that in order to receive constitutionally adequate notice, that you can only be convicted of something that you were formally charged of in a charging document. That's not even the law in this circuit. In Shepard v. Reese, I think there's a footnote where – it's also in the briefs where the – where the court expressly said that you can receive constitutionally adequate notice through other sources other than a charging document, including a preliminary hearing. And, again, in this case, the preliminary hearing transcript does have sufficient evidence to support a possible – possible burglary charge. So is your argument that you don't read Oliver as narrowly as Ms. Stafford does? Which, as I understand her argument, she says it requires either that he can only be tried on the charges he originally faced or a lesser included offense, that there's no ability under Oliver to add a new charge, even if the facts might have supported it originally. That is the argument in her brief. And she doesn't even really discuss on – well, before this Court, Petitioner doesn't really even argue whether there is reasonable notice from the preliminary hearing transcript. It's just relegated to a footnote. And basically, on appeal, it's argued that that's immaterial. And basically, the argument that Petitioner is hanging his hat on in this Court is that you can only receive formal – constitutionally adequate notice in a charging document, or you can only be convicted of a charge or a lesser included in a charging document. And that's not the rule in the U.S. Supreme Court, and that's not even the rule in this circuit. That's not the rule in the Fourth Circuit, and that's not the rule in the Eighth Circuit either. Of course, this Court's – of course, the only relevant authority is the United States Supreme Court precedent. The counsel, we can look to our precedent to determine whether or not a law is clearly established for purposes of habeas review. And opposing counsel has cited to the case of Gray v. Rains. How would you distinguish that case from the case we are considering? I apologize, Your Honor. I'm getting Gray confused with – oh, in Gray, he was charged with – the defendant was charged with forcible rape. The jury was instructed on statutory raping as convicted of statutory rape. Originally, he was charged with forcible rape. And after his testimony where he said he had sex but it was consensual, the indictment was amended to statutory rape. And so opposing counsel is saying this circumstance that we are presently facing is analogous to the Gray case where we gave relief on habeas. So how do you distinguish the Gray case? Well, Gray was – after Gray, there was Shepard and Morrison and also Murdershaw, like later Ninth Circuit cases. And basically, it doesn't appear that any of those cases really – We're still bound, but Gray has not been overruled. So would you – can you distinguish that case? Well, the only – I think they held that the Sixth Amendment notice violation was a per se error, but only one judge held that. One other judge basically said he had actual notice, and therefore, in that case, that any Sixth Amendment error was – there was no Sixth Amendment violation. And in this case, I believe that he did have sufficient notice of a possible burglary charge through the preliminary hearing transcript. And as Justice Aldister has mentioned earlier, he did – he was aware that he did threaten to kill the next person that walked into the room. And also, it didn't come out at the preliminary hearing, but at trial, it came out that he entered the store before with – and he attempted to steal another jacket before in the store. And basically – basically, I think that Gray could be distinguished on the basis that he did have actual notice here, because, again, those two factors that there was a prior attempt to steal at this very same store, and also his very statement in that – that Justice Aldister mentioned about threatening to kill someone. And stepping – I'm still not sure you've answered Judge Rawlinson's question. I mean, Gray, as I read it, says essentially that you must have a charge and specification which alleges the actual offense. And in that case, it was originally charged as a forcible rape case, and the prosecution waited until after the defendant admitted on the stand that he had sex but insisted that it was consensual. Then they amended the charge to say, okay, now your charge was statutory rape. She was under 18 or 17 or whatever the age is, and you're guilty based on your admissions. We said you can't do that. That's not adequate notice under the Sixth Amendment. Well – So how do you distinguish that case? I don't remember whether that was the case where they discussed ambush, but – It was ambush, yes. But I think in this case there was no – there was no intent to – there was no intent to ambush him with the sword in the same sort of way as in Gray. And, again, the relevant standard for – on Habeas Review is not whether there's a violation of this circuit's law, but whether there's a violation of the United States Supreme Court precedent. And – Even where our prior case purports to analyze the Sixth Amendment in determining whether or not that is adequate notice? Well, also another factor is Gray v. Raines. Obviously it's a pre-ADPA case as well. That's the only other thing that I could mention right now. And, again – The best you can do, you're out of time. So thank you for your argument. Thank you. Ms. Stafford, I think we used up all your time. So the case just argued is submitted. And anybody want a break? Or do you want to take a recess? Yes. Okay. The Court will be in recess for 10 minutes. All rise.
judges: Aldisert , Tallman, Rawlinson